GARY E. KLAUSNER (69077)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: gek@lnbyg.com; jsk@lnbyg.com

Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>1031 SOLUTIONS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:25-bk-11378-WB<br><br>**DEBTOR'S MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASE; DECLARATION OF LOGAN BEITLER IN SUPPORT THEREOF**<br><br><u>Hearing</u>:<br>Date: December 4, 2025<br>Time: 10:00 a.m.<br>PLACE: Courtroom 1375<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

1031 Solutions, LLC (the "Debtor"), Chapter 11 debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Case"), hereby moves the Court (the "Motion") for the entry of an order dismissing the Case, and respectfully represents as follows:

**I.**

**STATEMENT OF FACTS**

**A. Background.**

1. The Debtor commenced its Case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on February 24, 2025 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor's primary assets are its interests in two real properties located at 5550 E. Grand Road, Tucson, Arizona (the "Tucson Property"), and SWC Preston Road and John Hickman Parkway, Frisco, Texas 75034[1] (the "Frisco Property," and together with the Tucson Property, the "Properties"). Both of the Properties have tenants, and the Debtor is currently collecting rents from these tenants.

3. Specifically, the Tucson Property is leased to "Ross Dress For Less" ("Ross") pursuant to that certain "*Lease Agreement*" dated November 28, 2006 entered into between by the Debtor and Ross (together with any supplements and amendments thereto, the "Tucson Lease").

4. Regarding the Frisco Property, it is currently leased to Comerica Bank ("Comerica") pursuant to that certain "*Ground Lease*" dated November 4, 2019 entered into between by the Debtor and Texafornia Investors, LLC, on the one hand, and Comerica, on the other hand (together with any supplements and amendments thereto, the "Frisco Lease").

---

[1] The Debtor holds 41% TIC interests in the Frisco Property. The other entity that holds TIC interests in the Frisco Property is Texafornia Investors, LLC ("Texafornia"), a non-debtor entity.

5. In addition to any statutory tax liens for unpaid property taxes: (1) the Tucson Property is encumbered by the lien of Mountain America Credit Union (the "MACU"), who is currently owed approximately $3.7 million; and (2) the Frisco Property is encumbered by the senior lien of Partners Capital Solutions REIT I, LLC (the "PC"), who is currently owed approximately $4.5 million.

6. Prior to the bankruptcy filing, MACU claimed that a default had occurred under its loan, and caused a notice of default and election to sell under deed of trust (the "Notice of Default") to be issued and recorded in the Los Angeles County recorder's office against the Tucson Property. Although the Debtor was able to reach agreements with MACU to postpone the trustee sale on several occasions pre-petition, the Debtor was unable to work with MACU to further postpone the trustee sale scheduled for February 23, 2025.

7. When the Case was filed, the Debtor believed that the current fair market values of the Properties exceed the total asserted debt of MACU, PC, and other creditors. As a result, the Case was filed on the Petition Date with the goal of preserving the values of the Debtor's assets for the benefit of all creditors and equity holders.

**B. Post-Petition Proceedings.**

8. As a debtor-in-possession, since the Petition Date, the Debtor has collected: (1) rents from Ross (the "Tucson Rents"); and (2) rents from Comerica (the "Frisco Rents," and net of any post-petition expenses paid for the Frisco Property, the "Net Frisco Rents"). The Tucson Rents and Frisco Rents constitute the cash collateral of MACU and PC respectively.

9. On July 8, 2025, the Debtor obtained Court approval to retain Newmark Real Estate of Arizona, LLC ("Newmark") as real estate broker to market and sell the Tucson Property. Subsequently, on August 21, 2025, the Debtor obtained Court approval to retain Cresa LLC ("Cresa," and together with Newmark, the "Brokers") as real estate broker to market and sell the Frisco Property.

10. On July 8, 2025 (the "Plan Filing Date"), the Debtor filed the "*Debtor's Combined Disclosure Statement And Chapter 11 Plan*" (the "DS/P"), which consists of both the Debtor's disclosure statement (Sections I to VII of the DS/P, the "Disclosure Statement") and

plan (Section VIII of the DS/Plan, the "Plan"). Among other things, the Plan contemplated the payment in full of all allowed claims of creditors against the Debtor from the sale of the Properties after confirmation of the Plan.

11. At the September 11, 2025 hearing on approval of the Disclosure Statement (the "DS Hearing"), the Court was concerned about, among other things, the feasibility of the Plan, and continued the DS Hearing to November 6, 2025.

12. At this time, although the Debtor has been working with the Brokers to market and sell the Properties, the Debtor has not obtained any offers that are sufficient to pay off the secured creditors' claims in full.

13. With respect to the Tucson Property, due in part to the property being burdened by the unfavorable terms the of that certain "*Lease Agreement*" dated November 28, 2006 entered into by the Debtor and Ross (together with any supplements and amendments thereto, the "Tucson Lease") (*e.g.*, the provision of the lease which allows for Ross to pay reduced rent if a "Reduced Occupancy Period" occurs[2]), the Debtor has not obtained any offers that exceed MACU's $3.7 million secured claim. In fact, Newmark has only received one offer in the amount of $2,000,000 (which is substantially lower than the asserted amount owed to MACU).

14. With respect to the Frisco Property, the Debtor was recently informed that it is not possible to re-plat that property. As a result, the Debtor's previous plan to either: (1) sell the Frisco Property's two lots (*i.e.*, Lot 1A and Lot 1B) separately for maximum value; or (2) sell Lot 1A to reduce the debt of PC, and obtain refinancing (using the equity in Lot 1B as collateral) to pay off PC's allowed claim in full, is not possible. Further, on October 14, 2025, PC filed its "*Motion For Relief From The Automatic Stay Under 11 U.S.C. § 362*" [Doc. No.

---

[2] *See* (Tucson Lease § 6.1.3) (Required Co-Tenancy . . . A 'Reduced Occupancy Period' shall occur unless of the following requirements are satisfied . . . (i) the Required Co-Tenant . . . shall be open in the Adjacent Shopping Center . . . and (ii) the Required Co-Tenant is operating in at least the Required Leasing Floor Area . . . If a Reduced Occupancy Period occurs . . . Tenant's total obligation for5 Minimum Rent . . . shall be replaced by the greater of (a) Substitute Rent or (b) the sum of . . . $15,000 . . . per month[.]").

101] (the "RFS Motion"), attaching an appraisal valuing the property at $4,500,000 (which is less than the $4.56 million amount asserted by PC in its filed proof of claim).

15. In light of: (1) the Debtor being unable to obtain offers for the Properties that are sufficient to pay off the secured creditors' claims (which would mean that unsecured creditors would get nothing from the Properties' sale or foreclosure proceeds); (2) the Court's concerns about feasibility of the Debtor's Plan at the DS Hearing; and (3) the continuing accrual of interest and other fees on the claims of the secured creditors, the Debtor decided not to oppose PC's RFS Motion, and believes that dismissal of the Case would be in the best interest of creditors. Further, continuing the Chapter 11 process will only lead to further delay in paying the Debtor's creditors as well as added administrative and other expenses for the Estate.[3]

16. In contrast, dismissal of the Case will allow all creditors to pursue their remedies outside of, and without the litigation and expenses associated with litigation in bankruptcy. The general claims bar date in the Case expired on August 23, 2025 (the "Claims Bar Date"). As set forth on the Case's claims register (the "Claims Register") attached as **Exhibit "1"** hereto: (1) there are six (6) claims that have been filed in the Case, and (2) only two of these claims – *i.e.*, the FTB's $800 unsecured priority claim (as set forth on proof of claim number 2, the "FTB Claim"), and the unliquidated claim of Scenic Acquisitions LLC that is subject to litigation (as set forth on proof of claim number 4, the "Scenic Acquisitions Claim," and together with the FTB Claim, the "Unsecured Claims") – are unsecured claims. As a result, upon Case dismissal and the lifting of the automatic stay: (1) the creditors holding claims secured by the Properties (*i.e.*, MACU, PC, and the taxing authorities) can proceed with foreclosure proceedings, and/or look to the proceeds of their collateral for recovery; (2) Scenic Acquisitions LLC can try to

[3] Since it does not appear that the Properties can be promptly sold for more than the secured claims thereon, if the Case was converted to Chapter 7, the Chapter 7 trustee would not be able to administer the Properties. Further, if the Case were to be converted to Chapter 7, the Chapter 7 trustee there will be substantial additional Chapter 7 administrative expenses for a Chapter 7 trustee and the fees and expenses incurred by his/her professionals.

liquidate any claim that it has against the Debtor; and (3) the FTB can move forward with attempts to collect its $800 claim without further delay.

17. Therefore, the Debtor submits that adequate "cause" exists to dismiss this Case. The Debtor has reached an agreement (the "PC Agreement") with PC whereby, subject to Court approval: (1) any dismissal of the Case would be subject to a 180-day bar to re-filing; (2) the Net Frisco Rents would be paid to PC upon Case dismissal to pay down the property taxes for the Frisco Property. To the extent that any outstanding quarterly fees are due and owing to the Office of the US Trustee (the "OUST"), they will be paid in full prior to the entry of the order dismissing this case.

## II.

## ARGUMENT

### A. THE COURT SHOULD DISMISS THE DEBTOR'S CHAPTER 11 BANKRUPTCY CASE.

Section 1112(b) provides, in relevant part, as follows:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b). Section 1112(b)(4) contains 16 examples of what constitutes "cause." Notably, the 16 examples of "cause" for dismissal set forth in the Bankruptcy Code generally relate to bad acts by a debtor. This is not surprising because dismissal is usually seen as the ultimate penalty when a debtor fails to proceed as required by the Bankruptcy Code and Bankruptcy Rules. *See In re Kimble*, 96 B.R. 305, 307 (Bankr. D. Mont. 1988). The foregoing examples of "cause" for dismissal are not exclusive and "'[a] court may consider other factors as they arise and may 'use its equitable powers to reach an appropriate result in individual cases.'" *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991) (*quoting*

S.Rep No. 989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5903); *see also* 11 U.S.C. § 102(3).

Once it is determined that "cause" exists, the Court must determine whether to convert or dismiss the case based on what is in the best interests of creditors and the estate. *In re Staff Investment Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1993); *In re Evans*, 2002 WL 33939733, 1 (Bankr. D. Idaho 2002). This determination is committed to the Court's wide discretion. *Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000); *Kimble*, 96 B.R. at 307. While a debtor's interests are not specifically included in the best interests equation, they must be considered to the extent the debtor's interests coincide with interests of the estate. *Staff*, 146 B.R. at 261. In fact, a "[d]ebtor's request [to dismiss its Chapter 11 bankruptcy case] should ordinarily be granted unless some 'plain legal prejudice' will result to the creditors.'" *Kimble*, 96 B.R. at 907 (*quoting In re Geller*, 74 B.R. 685, 688-89 (Bankr. E.D. Pa. 1987) (*citing In re Hall*, 15 B.R. 913, 915-16 (9th Cir. BAP 1981); *see In re International Airport Inn Partnership*, 517 F.2d 510, 512 (9th Cir. 1975)).

As discussed above, dismissal of the Case would be in the best interest of creditors. Although the Debtor believed that the Properties were worth more than the total asserted debt of MACU, PC, and the Debtor's other creditors when the Case was filed – despite the Debtor's efforts to sell the Properties with the help of its Broker and the Case being pending for more than eight (8) months – the Debtor has not received offers for the Properties that are sufficient to pay off the claims secured by the Properties.

In light of: (1) the Debtor being unable to obtain offers for the Properties that are sufficient to pay off the secured creditors' claims (which would mean that unsecured creditors would get nothing from the Properties' sale or foreclosure proceeds); (2) the Court's concerns about feasibility of the Debtor's Plan at the DS Hearing; and (3) the continuing accrual of interest and other fees on the claims of the secured creditors, the Debtor decided not to oppose PC's RFS Motion, and believes that dismissal of the Case would be in the best interest of

creditors. Further, continuing the Chapter 11 process will only lead to further delay in paying the Debtor's creditors as well as added administrative and other expenses for the Estate.

In contrast, dismissal of the Case will allow all creditors to pursue their remedies outside of, and without the litigation and expenses associated with litigation in bankruptcy. Specifically, upon case dismissal: (1) the creditors holding claims secured by the Properties (*i.e.*, MACU, PC, and the taxing authorities) can proceed with foreclosure proceedings, and/or look to the proceeds of their collateral for recovery; (2) Scenic Acquisitions LLC can try to liquidate any claim that it has against the Debtor; and (3) the FTB can move forward with attempts to collect its $800 claim without further delay. In consideration of the foregoing, the Debtor respectfully submits that there is cause for Case dismissal, and that dismissal is in the best interests of creditors and the Estate. Further, pursuant to the PC Agreement, the Net Frisco Rents (which constitute PC's cash collateral) would be paid to PC upon Case dismissal to pay down the property taxes for the Frisco Property.

Further, although cases have held that orders entered in a bankruptcy case before its dismissal may survive dismissal even without clarification by the Court as to the continuing effectiveness of such orders. *See In re Pavelich*, 229 B.R. 777 (9th Cir. BAP 1999); *Gardenhire v. IRS (In re Gardenhire)*, 209 F.3d 1145 (9th Cir. 2000). With that said, the Debtor believes that it is preferable to obtain certainty by having the Court specifically order that all Bankruptcy Court orders entered during the pendency of the case will survive dismissal.

## IV.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1) Granting this Motion;

(2) Dismissing the Debtor's Case with a 180-day bar pursuant to the PC Agreement;

(3) Authorizing the Debtor to pay the Net Frisco Rents to PC upon dismissal of the Case to pay down the property taxes for the Frisco Property pursuant to the PC Agreement;

(4) Affirming the post-dismissal effectiveness of all Bankruptcy Court orders; and

/ / /

(5) granting such other and further relief as the Court deems just and proper.

Dated: November 3, 2025

1031 SOLUTIONS, LLC

*/s/ Jeffrey S. Kwong*
Gary E. Klausner
Jeffrey S. Kwong
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Counsel for Debtor and Debtor in Possession

**DECLARATION OF LOGAN BEITLER**

I, Logan Beitler, hereby declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am the Manager of 1031 Solutions, LLC (the "Debtor"). I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge and information recorded.

3. I make this declaration in support of the Debtor's "*Motion TO Dismiss Chapter 11 Bankruptcy Case*" (the "Motion").[4]

**Background**

4. The Debtor commenced its Case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on February 24, 2025 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor's primary assets are its interests in two real properties located at 5550 E. Grand Road, Tucson, Arizona (the "Tucson Property"), and SWC Preston Road and John Hickman Parkway, Frisco, Texas 75034[5] (the "Frisco Property," and together with the Tucson Property, the "Properties"). Both of the Properties have tenants, and the Debtor is currently collecting rents from these tenants.

6. Specifically, the Tucson Property is leased to "Ross Dress For Less" ("Ross") pursuant to that certain "*Lease Agreement*" dated November 28, 2006 entered into between by

[4] All capitalized but undefined terms herein shall have the same meanings ascribed to them in the Motion.

[5] The Debtor holds 41% TIC interests in the Frisco Property. The other entity that holds TIC interests in the Frisco Property is Texafornia Investors, LLC ("Texafornia"), a non-debtor entity.

the Debtor and Ross (together with any supplements and amendments thereto, the "Tucson Lease").

7. Regarding the Frisco Property, it is currently leased to Comerica Bank ("Comerica") pursuant to that certain "*Ground Lease*" dated November 4, 2019 entered into between by the Debtor and Texafornia Investors, LLC, on the one hand, and Comerica, on the other hand (together with any supplements and amendments thereto, the "Frisco Lease").

8. In addition to any statutory tax liens for unpaid property taxes: (1) the Tucson Property is encumbered by the lien of Mountain America Credit Union (the "MACU"), who is currently owed approximately $3.7 million; and (2) the Frisco Property is encumbered by the senior lien of Partners Capital Solutions REIT I, LLC (the "PC"), who is currently owed approximately $4.5 million.

9. Prior to the bankruptcy filing, MACU claimed that a default had occurred under its loan, and caused a notice of default and election to sell under deed of trust (the "Notice of Default") to be issued and recorded in the Los Angeles County recorder's office against the Tucson Property. Although the Debtor was able to reach agreements with MACU to postpone the trustee sale on several occasions pre-petition, the Debtor was unable to work with MACU to further postpone the trustee sale scheduled for February 23, 2025.

10. When the Case was filed, the Debtor believed that the current fair market values of the Properties exceed the total asserted debt of MACU, PC, and other creditors. As a result, the Case was filed on the Petition Date with the goal of preserving the values of the Debtor's assets for the benefit of all creditors and equity holders.

**Post-Petition Proceedings.**

11. As a debtor-in-possession, since the Petition Date, the Debtor has collected: (1) rents from Ross (the "Tucson Rents"); and (2) rents from Comerica (the "Frisco Rents," and net of any expenses paid for the Frisco Property, the "Net Frisco Rents"). I am informed and believe that the Tucson Rents and Frisco Rents constitute the cash collateral of MACU and PC respectively.

12. On July 8, 2025, the Debtor obtained Court approval to retain Newmark Real Estate of Arizona, LLC ("Newmark") as real estate broker to market and sell the Tucson Property. Subsequently, on August 21, 2025, the Debtor obtained Court approval to retain Cresa LLC ("Cresa," and together with Newmark, the "Brokers") as real estate broker to market and sell the Frisco Property.

13. On July 8, 2025 (the "Plan Filing Date"), the Debtor filed the "*Debtor's Combined Disclosure Statement And Chapter 11 Plan*" (the "DS/P"), which consists of both the Debtor's disclosure statement (Sections I to VII of the DS/P, the "Disclosure Statement") and plan (Section VIII of the DS/Plan, the "Plan"). Among other things, the Plan contemplated the payment in full of all allowed claims of creditors against the Debtor from the sale of the Properties after confirmation of the Plan.

14. I am informed and believe that at the September 11, 2025 hearing on approval of the Disclosure Statement (the "DS Hearing"), the Court was concerned about, among other things, the feasibility of the Plan and continued the DS Hearing to November 6, 2025.

15. At this time, although the Debtor has been working with the Brokers to market and sell the Properties, the Debtor has not obtained any offers that are sufficient to pay off the secured creditors' claims in full.

16. With respect to the Tucson Property, due in part to the property being burdened by the unfavorable terms the of that certain "*Lease Agreement*" dated November 28, 2006 entered into by the Debtor and Ross (together with any supplements and amendments thereto, the "Tucson Lease") (*e.g.*, the provision of the lease which allows for Ross to pay reduced rent if a "Reduced Occupancy Period" occurs[6]), the Debtor has not obtained any offers that exceed

[6] *See* (Tucson Lease § 6.1.3) (Required Co-Tenancy . . . A 'Reduced Occupancy Period' shall occur unless of the following requirements are satisfied . . . (i) the Required Co-Tenant . . . shall be open in the Adjacent Shopping Center . . . and (ii) the Required Co-Tenant is operating in at least the Required Leasing Floor Area . . . If a Reduced Occupancy Period occurs . . . Tenant's total obligation for5 Minimum Rent . . . shall be replaced by the greater of (a) Substitute Rent or (b) the sum of . . . $15,000 . . . per month[.]").

MACU's $3.7 million secured claim. In fact, Newmark has only received one offer in the amount of $2,000,000 (which is substantially lower than the asserted amount owed to MACU).

17. With respect to the Frisco Property, the Debtor was recently informed that it is not possible to re-plat that property. As a result, the Debtor's previous plan to either: (1) sell the Frisco Property's two lots (*i.e.*, Lot 1A and Lot 1B) separately for maximum value; or (2) sell Lot 1A to reduce the debt of PC, and obtain refinancing (using the equity in Lot 1B as collateral) to pay off PC's allowed claim in full, is not possible.

18. In light of: (1) the Debtor being unable to obtain offers for the Properties that are sufficient to pay off the secured creditors' claims (which would mean that unsecured creditors would get nothing from the Properties' sale or foreclosure proceeds); (2) the Court's concerns about feasibility of the Debtor's Plan at the DS Hearing; and (3) the continuing accrual of interest and other fees on the claims of the secured creditors, the Debtor decided not to oppose PC's RFS Motion, and believes that dismissal of the Case would be in the best interest of creditors. Further, continuing the Chapter 11 process will only lead to further delay in paying the Debtor's creditors as well as added administrative and other expenses for the Estate.

18. In contrast, dismissal of the Case will allow all creditors to pursue their remedies outside of, and without the litigation and expenses associated with litigation in bankruptcy. Therefore, the Debtor submits that adequate "cause" exists to dismiss this Case. The Debtor has reached an agreement (the "PC Agreement") with PC whereby, subject to Court approval, any dismissal of the Case would be subject to a 180-day bar to re-filing. To the extent that any outstanding quarterly fees are due and owing to the Office of the US Trustee (the "OUST"), they will be paid in full prior to the entry of the order dismissing this case.

Executed on this 3rd day of November 2025, at Los Angeles, California.

LOGAN BEITLER

# Exhibit 1

# Central District of California
# Claims Register

2:25-bk-11378-WB 1031 Solutions, LLC

**Judge:** Julia W. Brand **Chapter:** 11
**Office:** Los Angeles **Last Date to file claims:**
**Trustee:** **Last Date to file (Govt):**

*Creditor:* (42375486)
Pima County, Arizona
c/o Pima County Attorney's Office
32 N. Stone Avenue, Suite 2100
Tucson, AZ 85701

**Claim No: 1**
*Original Filed Date*: 03/12/2025
*Original Entered Date*: 03/12/2025

*Status:*
*Filed by:* CR
*Entered by:* AUTP
*Modified:*

Amount claimed: $45000.00
Secured claimed: $45000.00

*History:*
Details 1-1 03/12/2025 Claim #1 filed by Pima County, Arizona, Amount claimed: $45000.00 (AUTP)

*Description:*
*Remarks:* (1-1) Account Number (last 4 digits):021A

*Creditor:* (42379037)
Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento CA 95812-2952

**Claim No: 2**
*Original Filed Date*: 03/14/2025
*Original Entered Date*: 03/14/2025

*Status:*
*Filed by:* CR
*Entered by:* Cathy Saechao
*Modified:*

Amount claimed: $800.00
Priority claimed: $800.00

*History:*
Details 2-1 03/14/2025 Claim #2 filed by Franchise Tax Board, Amount claimed: $800.00 (Saechao, Cathy)

*Description:* (2-1) 0069
*Remarks:*

*Creditor:* (42395510)
COLLIN COUNTY TAX ASSESSOR/ COLLECTOR
Abernathy, Roeder, Boyd & Hullett, P.C
1700 Redbud Blvd., Suite 300
McKinney, TX 75069

**Claim No: 3**
*Original Filed Date*: 03/25/2025
*Original Entered Date*: 03/25/2025

*Status:*
*Filed by:* CR
*Entered by:* AUTP
*Modified:*

Amount claimed: $18198.60
Secured claimed: $18198.60

*History:*
Details 3-1 03/25/2025 Claim #3 filed by COLLIN COUNTY TAX ASSESSOR/COLLECTOR, Amount claimed: $18198.60 (AUTP)

*Description:*
*Remarks:* (3-1) Account Number (last 4 digits):0101

| | | |
|---|---|---|
| *Creditor:* (42457198)<br>Scenic Acquisitions LLC<br>c/o Winstead PC, Attn: Jason A. Enright<br>2728 N. Harwood Street, Suite 500<br>Dallas, TX 75201 | **Claim No: 4**<br>*Original Filed Date*: 05/01/2025<br>*Original Entered Date*: 05/01/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |

Amount claimed: $475554.00

*History:*

Details 4-1 05/01/2025 Claim #4 filed by Scenic Acquisitions LLC, Amount claimed: $475554.00 (AUTP)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (42434326)<br>Partners Capital Solutions REIT I, LLC<br>26901 Agoura Road, Suite 180<br>Agoura Hills CA 91301 | **Claim No: 5**<br>*Original Filed Date*: 05/28/2025<br>*Original Entered Date*: 05/28/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |

Amount claimed: $4564044.09

Secured claimed: $4564044.09

*History:*

Details 5-1 05/28/2025 Claim #5 filed by Partners Capital Solutions REIT I, LLC, Amount claimed: $4564044.09 (AUTP)

*Description:*

*Remarks:* (5-1) Account Number (last 4 digits):1450

| | | |
|---|---|---|
| *Creditor:* (42548102)<br>FRISCO INDEPENDENT SCHOOL DISTRICT<br>C/O PERDUE BRANDON FIELDER ET AL<br>1919 S. SHILOH ROAD, SUITE 640, LB 40<br>GARLAND, TX 75042 | **Claim No: 6**<br>*Original Filed Date*: 07/01/2025<br>*Original Entered Date*: 07/01/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |

Amount claimed: $72575.95

Secured claimed: $72575.95

*History:*

Details 6-1 07/01/2025 Claim #6 filed by FRISCO INDEPENDENT SCHOOL DISTRICT, Amount claimed: $72575.95 (AUTP)

*Description:*

*Remarks:* (6-1) Account Number (last 4 digits):0101

## Claims Register Summary

**Case Name:** 1031 Solutions, LLC
**Case Number:** 2:25-bk-11378-WB
**Chapter:** 11
**Date Filed:** 02/24/2025
**Total Number Of Claims:** 6

| | |
|---|---|
| **Total Amount Claimed*** | $5176172.64 |

| | |
|---|---|
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $4699818.64 | |
| **Priority** | $800.00 | |
| **Administrative** | | |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/03/2025 16:34:38 | | | |
| **PACER Login:** | jskwong8 | **Client Code:** | 10847 |
| **Description:** | Claims Register | **Search Criteria:** | 2:25-bk-11378-WB Filed or Entered From: 1/1/2025 Filed or Entered To: 12/31/2025 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A True And Correct Copy Of The Foregoing Document **Debtor's Motion To Dismiss Chapter 11 Bankruptcy Case; Declaration Of Logan Beitler In Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 3, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael E Bubman mbubman@mbn.law, aacosta@mbnlawyers.com
- Gary E Klausner gek@lnbyg.com
- Jeffrey S Kwong jsk@lnbyg.com, jsk@ecf.inforuptcy.com
- Alan I Nahmias anahmias@mbn.law, jdale@mbn.law
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Belinda M Vega apark@venable.com, bmvega@venable.com
- Hatty K Yip hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **November 3, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
***U.S. Trustee***

☐ Service list attached

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 3, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 3, 2025 | Vanina Ivanova | */s/ Vanina Ivanova* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |